# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JORGE A. ANGULO

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:15-MJ-0872

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about November 23, 2015, in the Southern District of Indiana and elsewhere, defendant JORGE A. ANGULO did possess with the intent to distribute and to distribute controlled substances, including 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and a kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent with the U.S. Immigration and Customs Enforcement, Homeland Security Investigations, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

Special Agent Daron Babcock
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

**Sworn to before me, and subscribed in my presence**

November 27, 2015
**Date**

at  Indianapolis, Indiana

Debra McVicker Lynch, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

I, Daron Babcock, being duly sworn, depose and say:

1. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the United States Immigration and Customs Enforcement ("ICE"), and its predecessor, the United States Customs Service, since June 2001. I am currently assigned as a Special Agent with the ICE, Homeland Security Investigations ("HSI") office in Indianapolis, Indiana, and have been so assigned since July 2007. In connection with my official duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I also investigate violations of the federal money laundering and bulk cash smuggling laws, including, but not limited to, Title 18, United States Code, Sections 1956 and 1957, and Title 31, Section 5332. In addition, I also investigate violations of federal firearms laws, including, but not limited to, Title 18, United States Code, Section 922, as well as administrative and criminal immigration laws. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I also have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking offenses.

3. I have received training in investigations involving individuals smuggling, transporting and distributing illegal narcotics. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their utilization of stash houses and other storage facilities, their use of firearms in the commission of

drug trafficking offenses as well as a means to protect drug and bulk currency storage locations, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

4. I have also received training in money laundering and bulk cash smuggling techniques utilized by drug trafficking organizations to launder, conceal, and transport illicit financial proceeds related to narcotics crimes throughout the United States and across international borders. I am familiar with the ways in which drug trafficking organizations transport their proceeds, including, but not limited to, their methods of collecting and transporting bulk currency, their use of passenger and commercial vehicles for concealment, their use of currency "mules" and handlers to avoid law enforcement detection, their use of stash houses and other storage facilities, and their use of sophisticated compartments and cross-border smuggling techniques.

5. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers, the utilization of telephone wiretaps, the execution of search warrants, and undercover operations.

6. This Affidavit is submitted in support of a Complaint charging JORGE ANGULA with possession with the intent to distribute and to distribute controlled substances, including 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and a kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

7. On or about November 23, 2015, an Indianapolis Metropolitan Police Department (IMPD) officer observed a refrigerated tractor trailer (the "truck") around Indianapolis, Indiana. The IMPD officer stopped the truck after observing the truck's driver commit a traffic violation (the driver failed to signal, and then performed an unsafe lane change near I-70 & I-65). The IMPD officer stopped the truck on eastbound I-70 near Keystone Avenue at approximately 8:20 p.m. on November 23, 2015. The IMPD officer approached the driver, identified as defendant JORGE A. ANGULO, and advised ANGULO of the reasons for the traffic stop. ANGULO produced his California driver's license and vehicle registration, logbook, bill-of-lading, and insurance information. ANGULO advised he was coming from California, a state known to be the source of illegal narcotics, and was headed to New Jersey with a load of orange juice. The IMPD officer went back to his fully-marked IMPD patrol car to complete the enforcement action and observed several padlocks and plastic seals on the rear doors of the trailer. The IMPD officer knew from his training and experience that having several locks and seals on a trailer containing orange juice is uncommon practice in the trucking industry. While waiting for the warning ticket for the violations to print out on his computer, the IMPD officer ran record checks on ANGULO and the vehicle and received a reply from the El Paso Intelligence Center that both the driver and the trailer were involved in prior narcotics investigations with DEA out of New York, and HSI out of Phoenix, Arizona.

8. The IMPD officer requested a second IMPD unit to respond to the scene of the traffic stop based on the indicators of criminal activity. Once the second unit arrived on scene, the IMPD officer returned ANGULO's information and paperwork to him and issued the driver an electronic warning ticket for the observed traffic violations. Once the enforcement action was completed, the IMPD officer asked ANGULO for permission to search his semi-truck; ANGULO then asked the officer if he wanted to search the trailer as well. The IMPD officer stated that he would like to search the trailer

after the cab of the truck was searched. The IMPD officer then searched the cab of the semi-truck with negative results and the driver used a key off of his key ring to open the locks on the rear door of the trailer. The driver opened the doors of the trailer and the IMPD officer observed several pallets of orange juice in the trailer. The officer then climbed over the top of the orange juice toward the front of the trailer and observed a hard plastic shell which appeared to be attached to the front wall of the trailer. The plastic shell was attached to the front wall of the trailer with bolts which appeared to be relatively new, and there were also two metal safety bars across the plastic shell as well. The IMPD officer used his flashlight and looked through a small opening in the plastic shell and observed at least five kilogram-sized bricks wrapped in purple plastic wrap. Based on his training and experience, the officer believed the packages to be some type of illegal narcotic substance.

9. After exiting the trailer, ANGULO asked the officer if anything was wrong. The officer then advised ANGULO that he believed there was something wrong with the front area of the trailer. Upon hearing that information, ANGULO immediately looked down at the ground with a defeated look. The semi-truck and trailer was then towed to Hix Towing in Indianapolis, Indiana for further inspection. ANGULO was placed into handcuffs for officer safety purposes and was transported in a marked IMPD car to Hix Towing as well. A certified IMPD narcotics K-9 was utilized, and the dog alerted for the presence of the odor of narcotics inside the truck. Once the trailer was off loaded, officers removed the plastic shell from the front wall of the trailer and discovered approximately 40 bricks of suspected controlled substances. One of each type of the bricks were field tested and the illegal narcotics were determined to be cocaine, heroin, and methamphetamine. In total, officers seized: 23 kilogram-sized bricks of suspected cocaine wrapped in plastic wrap; 15 kilogram-sized bricks of suspected heroin wrapped in purple plastic wrap; and 2 kilogram-sized bricks of suspected methamphetamine wrapped in plastic wrap.

10. Law enforcement then conducted a search of the truck and discovered and seized approximately 40 kilograms of controlled substances from inside the truck. Law enforcement conducted field tests of the substances; the tests revealed that the truck contained cocaine, heroin, and methamphetamine. Law enforcement seized approximately 23 kilograms of cocaine, 15 kilograms of heroin, and 2 kilograms of methamphetamine from inside the truck.

11. Further investigation revealed that both the tractor and trailer are personally owned by ANGULO. The tractor is registered in the name of Anna Maria Angulo at ANGULO's residence; the trailer is registered in the name of Anna Maria Angulo and JORGE ANGULO at an address in Los Angeles.

12. Based on the above information, there is probable cause to believe that on or about November 23, 2015, JORGE ANGULO knowingly possessed with the intent to distribute controlled substances, including 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and a kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

_____
Daron Babcock, Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

Signed and subscribed to before me on this 27th day of November, 2015.

_____
Debra McVicker Lynch,
Magistrate Judge
Southern District of Indiana